Good morning, Your Honors. May it please the Court, my name is Jason Lean and I represent the Appellant Cross Appellee, Strata Corporation. The District Court in this case erred by resolving this insurance coverage action on an incorrect standard applying the duty to defend. The District Court applied a Rule 12 standard and evaluated the actual merits of the complaint in determining whether a duty to defend existed, as opposed to the actual duty to defend standard that asks whether the allegations give rise to potential liability or possible coverage under the policy. In fact, the duty to defend was never disputed or at issue between the attorney letter in April of 2015 told Houston Casualty, we don't need you to defend. Your brief starts out by saying the duty to defend, it only comes into play after Liberty settles out. I don't understand why you go on and on in your brief about 2012 and 2013 investigations. That's a big so what, isn't it? Your Honor, respectfully, no. The reason why the duty to defend is relevant in this appeal is because the District Court resolved this issue, the entire case, the coverage and the bad faith case, on the duty to defend. No, based on its conclusion, there was no coverage. There's no duty to defend if there's no coverage. Your Honor, respectfully, I disagree with that. Well, I've read the opinion, you've read the opinion, we disagree about it, fine, but in my view, the District Court decision is based on the coverage question quite properly and to the extent your side muddied the water by arguing or pleading the duty to defend and so the District Court felt compelled to say there's no duty to defend. Your Honor, our coverage claim was... That's what you've got to deal with me because it seems to me that you have no duty to defend damages unless your client had refused to settle. I mean, in settlement, if the duty to defend includes a duty to lead in the settlement, but Liberty took care of that and in the settlement conference then, Houston was asked to contribute, so to speak, and it declined based on its view of coverage. Liberty settled. All right, now if your client refuses to settle the... If the Liberty's policy limits don't satisfy the plaintiffs and your client is unwilling to go further and the case goes on, okay, now Houston Casualty's duty to defend would presumably kick in, but that didn't happen. And I agree, Your Honor. So there's no duty to defend in this case. I agree, Your Honor, and that's why the District Court's ruling is an error because it resolved the entire case on a duty to defend question. No, it didn't. I mean, you, like many lawyers, you pick up on the articulation of a decision and ignore its factual and legal underpinnings. We don't do that. We would never do that. And Your Honor, that's not our case either. Our case is that Houston Casualty breached the duty to indemnify. However... When would Houston's duty kick in if the Liberty policy was never exhausted? And what are the facts that indicate Houston's policy was exhausted triggering the excess? Your Honor, I agree that Liberty was defending Strada all the way through the August 2016 settlement conference. And our position is that the policy was exhausted through a below-limits settlement. What are the facts? That's your position. But what are the facts that indicate that? What was the policy limit and how much did they pay? So the policy limits, it was a $500,000 limit policy for the workers' comp employer liability policy. It was exhausted through a below-limits settlement, which is submitted... What did they pay? Liberty paid $150,000. So that doesn't reach a half a million dollars? Pursuant to the settlement, Strada assumed the remaining amount to trigger the limits of the policy. This particular type of settlement is a below-limits policy settlement and is permitted by... So you're saying Strada made up the difference? Correct. And so... It's permitted by what? It's permitted by long-standing case law. The Z case out of the Second Circuit and the Samuels Midland decision out of the Eighth Circuit. What I know about Minnesota law is the Miller-Shugart Doctrine. It's got to be reasonable. Yeah, and the reasonableness of the settlement, Your Honor, has never been an issue in this case. No, no, no. I would say the artificial manufacturing of policy limits in order to drag the excess adjurer in has to be reasonable by an extension of the Miller-Shugart Doctrine and its counterparts in most state laws. And actually, Your Honor, North Dakota law applied in this particular case and that's the governing law that the District Court found applied in this case. But with respect to the exhaustion doctrine, we've cited those cases in our brief and a primary policy can be exhausted on this basis. And once it's exhausted, then the excess policy kicks in. Strata, after that policy was exhausted through the settlement, which we contend is permitted by law. And it's permitted for good reason, to promote public policy, to encourage settlements, and to, and it doesn't really impact the excess carrier's ability under its contract. So let's say you do get over that hurdle. Then you run into the hurdle of the exclusion. What, what's incorrect about the argument made by the insurer here that there's no coverage for intentional acts done by the company in harm to an employee? Yes, Your Honor. This particular exclusion that's at issue is the Montana Intentional Injury Exclusion Endorsement that is part of the Liberty Mutual Policy. And it's not a pure intentional act exclusion. It actually replaces the intentional act exclusion in the policy. And specifically... You mean the Montana... Excuse me, Your Honor? That's not a pure intent, what's a pure intentional act exclusion? It's a basic intentional act exclusion that's... I mean, it's the way each insurer defines an exclusion. Probably ISO has guidance on the subject. But are you talking about the Montana, the Montana Intentional Add-on? Yes, Your Honor. So it's broader than the Montana statute. So it excludes more even than the Montana statute. Respectfully, Your Honor, I disagree. I think it, it, the actual endorsement says... Are we going plain language, isn't it? I mean, I've read, I've read the, the Alexander case. I've read the statute it interprets. And I've read the policy exclusion and the latter is broader than the former. And Your Honor, I think, and here's the argument with respect to that, is that the actual endorsement says it does not cover bodily injury caused by your intentional, malicious or deliberate act. Whether or not the act was intended to cause injury to the employee injured or whether or not you had actual knowledge that an injury was certain to occur. If you look at the, with respect to the Alexander decision, what Strata faced in this case was that that, the Montana Supreme Court in that decision and other cases in Montana have held that direct proof of an intentional act that caused injury to the employee is not required and actually may be inferred from facts indicating that the employer knew that an employee was being harmed, failed to warn the employee of that and failed to expose the employee to that harm. But isn't that exactly what was pled in the underlying suit? It was pled in the underlying suit. So doesn't it clearly fall within the exclusion and isn't that exclusion, doesn't the excess policy also incorporate that exclusion? Your Honor, I don't believe it falls directly in the exclusion and here's why. We cited a case called West Virginia Association. It was a Supreme Court decision from West Virginia from 2011. It had similar language than the endorsement that exists in this case and it dealt with a similar claim under West Virginia's version of the exception to the worker's comp action. There the trial court actually found that the exclusion did not apply and it went up on appeal. The West Virginia Supreme Court reversed and I believe based on my reading of that decision, what was really significant to the court in that decision was that the endorsement made a specific reference to the West Virginia statute at issue that made it very conspicuous, plain, clear and obvious that coverage was excluded for that particular claim. Here, the endorsement at issue does not refer to the Montana statute with that specificity. It makes no reference to the Montana statute and I believe that based on Alexander which allows for... Why does that matter? Isn't it just a matter of comparing what was pled with the exclusion language and if it's the same thing, it's excluded? Your Honor, here though under Montana, the way that the statute is applied by the Montana courts, bodily intent can be inferred from facts indicating that the employer knew that the employee was being harmed. The district court assumed that aspect of the test, right, in its decision. I thought I'll assume that there was the requisite intentional acts. Faust alleged aggravated conduct but non-intent to injure or knowledge injury certain. Your Honor, are you referring to the district court in this case? Yes. What other court are we talking about? I thought there was a question from the underlying action. I apologize. Well, there was no ruling in the underlying action. Correct, Your Honor. The district court in this case, I believe, the way I look at the I did not see any reference to the duty to indemnify and I believe that's why it is in there. For those reasons, we would ask the court to reverse... If it's crystal clear that the coverage is excluded, how can there be a duty to defend? A duty to defend is broader, Your Honor, than the duty to indemnify and Liberty acknowledged this as well as Houston did in the underlying case when it issued its letter... Why does that matter? In this context, you've admitted there was no duty to defend at the time that the coverage that Houston said, we're not going to participate in the settlement conference because we deny coverage. We can't possibly help the client. Your Honor, the reason why we're raising this is based on the district court's ruling in this case. We've said that four times and it's just not so. Respectfully, Your Honor. That's why Judge Grunder says if it's clear the exclusion applies, why in this context are we muddying around with the duty to defend? The duty to defend is broader because the insurer needs defense cost, among other things, protection during the litigation which your Yes, Your Honor. However, the broadness of the duty to defend is to me irrelevant in this case. And I would agree, Your Honor, except for the district court based its ruling on the duty to defend and that's why we believe it was in there. I would like to reserve the rest of my time for rebuttal, Your Honors. Thank you, Mr. Lane. Thank you. Mr. Dyer. May it please the court, counsel, my name is John Dyer. I'm here this morning on behalf of Houston Casualty Company. Judge Erickson's decision should be affirmed because there is no set of facts under which Houston Casualty Company would be bound to indemnify Strata had the estate of Faust prevailed on its claim. Because there's no potential for coverage, there's no duty to defend, although it's not a duty to defend issue. And more importantly, if there's no coverage, there is and can be no bad faith. You just misstated the law. I may have. When you put the word potential in there, if there is potential coverage, there is a duty to defend, but if the potentiality disappears, there's no duty to indemnify, right? If I said that, I misspoke. If there is, there is no potential for coverage. There's no way Mr. Faust could have won his lawsuit. Your client said may become implicated as soon as it was clear that the workers' comp employer liability policy was in play as well as the comprehensive general liability policy. Your own client said that. The initial reservation and rights letter said that. The second one. I'm sorry, the second one, yeah. In Montana, it is nearly impossible and really dangerous for an insurance company to refuse to defend. If you refuse to defend... Everywhere, even though Montana may be tougher. Yeah. I think that you can generalize that. Yeah, and so you always defend whether there's coverage or not, but under the law, if you have the nerve, under the law, you can say, I'm sorry, if the plaintiff wins this lawsuit, there's no coverage, so I'm not going to defend. I've been in cases with quite a few nervy insurance companies over the course of quite a few years. There are plenty of them who say, we ain't defending. Right. Some of them lose, but some of them win. Well, in the usual circumstance, Your Honor, as you know, is you've got a case where there's an allegation of intentional conduct, there's... I've distracted you. No, it's okay. It's actually... One thing I'm curious about, if I went and studied all of the motion papers, arguments, memos to the district court, particularly from Strata, would I find any reference and emphasis on the duty to defend? Yes. Was the district court led, if you will, to feel it had to deal with the duty to defend by the way the case was argued by Strata? It was, yes. Subject of interpretation. Yeah, yeah, and it's clearly not a duty to defend case as you pointed out. I mean, no one asked Houston Casualty to defend. They were at a settlement conference. That whole bad faith argument in the back half of the blue brief is about all the things that your client did fail to investigate and prevaricated in its early letters? Yep. I assume that was all urged to the district court as well. Yes, we set out, well, obviously in North Dakota and in other states, bad faith exists if there is no reasonable basis for what the insurance company did. And in our response to the summary judgment briefs, we pointed out all the reasonable things that Houston Casualty did as an excess carrier, how they monitored the cases, they got the briefs, they got . . . defense counsel reported them. They were paying attention to the case. They were doing what they were supposed to do. But we never have to get to there because if there's no coverage, there can be no bad faith. There was a case, Mouw v. Twin City Federal Judge Hofland said it better than I can. He said, look, bad faith is all about you didn't pay me what you owed me under the policy. And if you do that unreasonably, that's bad faith. Well, if there's no duty to pay . . . I didn't mean to invite you to argue bad faith. I'm more interested, I think, as the Chief Judge is, all of us are, is with the exclusion. Sure. And its applicability to this situation. Right. All right. So this is a unique circumstance. As I said earlier, we often see coverage cases where you have an intentional tort, a negligence claim, negligence supervision claims, and so forth. And the insurance company has to defend under reservation of rights. You have to ultimately find out what was the insured's intent. This is not that case.  Mr. Faust was injured and died in Montana. And so STRATA was protected by the workers' compensation exclusivity provisions. Mr. Faust couldn't sue STRATA. Unless . . . Unless. Unless he could make a claim under section 3971.413, which I'm going to call 413 for short. That standard, in order for Mr. Faust to prevail, he had to prove that STRATA intentionally, he was intentionally injured by an intentional and deliberate act. And under the statute, it has to prove an intentional injury. An intentional injury is an injury caused by intentional and deliberate act, specifically and actually intended to cause injury to Mr. Faust. And there was actual knowledge that an injury is certain to occur. There is no way you can prove that case and have coverage in North Dakota. So let me ask you, you mentioned insured's intent. Why would a company buy an employer liability policy that excludes coverage for intentional acts if non-intentional acts are covered exclusively by workers' compensation? It's been a while since I've read an employer's liability coverage, Your Honor, but I believe there are certain types of claims that are covered under employer's liability that aren't covered by work comp. I can't tell you what they are. I just did an opinion on this the other day, but I can't recall. But I know there are additional coverages. They'd be non-physical injury type? I would be guessing at this point, Your Honor. I don't know. I'm sorry. It just seems like it's a worthless purchase. It gives you no additional coverage. First of all, it's not an issue that's been raised. Illusory coverage has not been raised, so I'm not prepared to respond to that. But it's not even a matter of what the insurance company is doing here. It's not really a matter of, you know, gee, the insurance company wrote this coverage and took it away. You can't insure the conduct required by 413 as a matter of public policy in North Dakota. You just can't do it. It doesn't matter what the policy says. You can't insure this degree of intentional misconduct. And in the last brief, Strata argued that the cases that are in North Dakota where coverage is excluded for intentional acts don't require the same degree of misconduct that 413 does. And they cited in particular the Tibberts case. And Tibberts is a North Dakota case. It set the bar for the type of conduct for which you can insure under insurance policies, intentional act exclusions, and as a matter of public policy. And the bar that they set was if there is an act that's done intentionally and of such a character, harmful consequences are substantially certain to result from the act, as a matter of public policy, you can't cover that. Counsel, what's the facts in the law here regarding exhaustion of the principal policy to trigger your coverage? The facts are that less than $500,000 of the Liberty Mutual policy was exhausted. I believe today the testimony was $150,000 was paid. So I think that's a conceded fact. The only issue I raise is my cross appeal. So factually, it didn't occur. What did the district court find in that regard? The district court found that it did, and he was frankly mistaken. So we'd have to review that for clear error, wouldn't we? Yeah, but I think it's not been conceded on appeal. It's clearly an error. In the record below, there was an affidavit from a gentleman named Jay Evans from Strata. Let me ask, I thought I understood the argument to be that Strata agreed to fill in  Can you explain that to me? So what they do is they say, look, we spent X number of dollars settling the case, and we're only going to ask Houston Casualty to pay X minus the $500,000 limits, as opposed to X minus the $150,000 that Houston Casualty actually paid. And so they're trying to basically rewrite our insurance policy for us, saying, well, I don't care what your policy says, we'll just give you credit for it. But that's not what our policy requires. So the decedent's estate is giving you credit for the $350,000, is that- No, they're just, no. Houston Casualty is saying, look, I'm not, I'm sorry. Strata is saying, look, we paid, I can't remember, it was $2.5 million or something. Of that, they paid all but $150,000. And so they're saying, look, we'll give you credit for the $500,000 that Liberty didn't pay, and we'll just start asking you to pay us back at the $500,000 range, or point. Okay. In the Tibbert case- Well, the district court isn't wrong. I suppose whether the Second Circuit doctrine applies to North, is good law in North Dakota, which has not been decided. On the exhaustion issue? Yes. And so necessarily, the district court, to me, assumed that it would apply. He may . . . He decided, and so, to me, it's factually conceded this morning, but that doesn't concede the district court erred. The district court only erred if this doctrine you say is contrary to the policy. Correct, exactly. It can trump the policy. I can't tell you what Judge Erickson was thinking. He may have been saying, we're going to . . . It seems to me that, therefore, we either address that. If we want to proceed with the exhaustion issue, it's either a remand, or we decide that the Supreme Court of North Dakota wouldn't like that doctrine, or wouldn't apply it to trump your client's policy. It's ultimately going to be a question of law, which I think whether Judge Erickson decided that matter as a matter of law or not, you have appellate review authority to decide questions in Oval. You just relied on your . . . In addition to saying the policy is no good as a matter of law, you said, and it doesn't apply to our insurance policy. It excludes it. That's a fact question. Well, I mean, that's a mixed question. Well, I think on the exhaustion issue . . . Maybe I've confused you, and I apologize if I did. Factually, I think it was conceded in the briefs that Liberty Mutual did not pay $500,000. It didn't pay the entire policy limits. I don't know what Judge Erickson's decision was based on, whether he was just giving credit like . . . Let me be more bottom line oriented. Okay. If Judge Erickson is otherwise affirmed, your cross appeal becomes moot? Absolutely. If there's no coverage, it doesn't make any difference what Liberty Mutual did, and there's no coverage here. Again, the standard that North Dakota has chosen, the bar that it set for intentional acts that cannot be covered as a matter of public policy under any insurance policy, intentional act exclusion is harm substantially certain to occur. The bar in Montana under 413 is so much higher than that. I mean, we're talking about intentional conduct at levels . . . I can't think of anything else that even comes close to it. In the Tibberidge case, it's interesting. The insured had actually argued that the proper standard for when you'll cut off coverage for intentional acts is an intentional act that was intended to cause injury, which is pretty close to 413. A North Dakota Supreme Court rejected that argument and said, no, that's . . . Well, Alexander, as to the second plaintiff, is not so good for you on that. How so? Well, going on for pages and pages and citing the criminal law cases on how not difficult it is to use circumstantial evidence to prove intent just from the obvious risk you're creating and disregarding. Right. In Montana, you point out the Alexander case. There's been a fight between the legislature and the Supreme Court for years about what's required under 413. The Supreme Court keeps watering it down, and the legislature keeps ratcheting it back up. And again, we're at a standard that's so high now. I mean, that is the kind of intention . . . That's probably a higher standard than deliberate homicide in Montana, which we all know you can't cover as a matter of policy. But Alexander's applying that statute after the legislature had ratcheted up. Well, right, but remember the first . . . Wise and then Alexander, and Wise, I think, was for the insurer, and Alexander had two plaintiffs. So those aren't . . . . . . chemical irritant sequentially. And the court said, well, because you knew what happened to the first guy when you put the second guy in the small office with the bad stove, he gets to a jury on his claim. Right, and that's what we're down to. It's not that because you don't need direct proof of intent to injure. You don't, but ultimately to win, you need to prove, if you're Mr. Faust, that there was injury that was certain to occur. And let's assume that the facts in the complaint said that and reached that level. There can't be coverage for that, because that is an intentional act of the utmost degree, and it's against public policy in North Dakota and probably every other state to ensure that type of intentional wrongdoing. Thank you. Thank you, Mr. Dyer. Mr. Lane, I think you've got about a minute and a half or so for rebuttal. Thank you, Your Honors. Briefly, I'd like to make two points. First, I want to make clear that we have not conceded that the underlying policy was not exhausted. It was exhausted, and we were very clear in our position to the district court. We filed the settlement agreements under sealed as required by the confidentiality provisions in them. And the language of the settlement agreement, we believe, is correct under the majority holdings of most courts, including the Eighth Circuit, that allows this type of settlement to exhaust. Under a Miller-Sugar type arrangement, is that your view? Under a Zeig type of settlement. And off the top of my head, I can't quite picture how the Miller-Sugar fits into that, but it's the Zeig case, which has been adopted by a majority of the courts, including the Eighth Circuit. Therefore, it was exhausted. And I believe that the district court's decision recognizes that when it says the settlement agreement, the settlement agreement exhausted the limits of the liberty mutual, employers' liability coverage. And so the court is acknowledging that this can be exhausted by the settlement agreement. Moreover, the policy of Houston does not prohibit exhaustion in this method. We are not attempting to rewrite the policy. The language of the policy doesn't prohibit settlement by way of cash. It doesn't say that the cash needs to be paid by only the insurance company. It can be paid by, it's vague in that regard. And here, it was paid by liberty as well as strata, and we believe that exhausted the limits. I see my time has concluded, so thank you, Your Honors, and we respectfully ask that the court reverse this case for further proceedings before the district court. Thank you, Mr. Lynn. Thank you. The court wishes to thank both counsel for the arguments you provided to the court this morning, the briefing which you have submitted, and we will take your case under advisement. Thank you. You may be excused.